UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN DOE,

      Plaintiff,

v.                                                                    Case No. 2:18-CV-196

NORTHERN MICHIGAN UNIVERSITY,                HON. GORDON J. QUIST
JANET KOSKI, DONNA BEAUCHAINE,
in their individual and official capacities,
and CHRISTINE GREER, in her official
capacity only, jointly and severally,

      Defendants.
_____/

## OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff, John Doe, filed the instant case alleging that Defendants violated his constitutional and federal statutory rights, breached a contract that Plaintiff had with Defendant Northern Michigan University (NMU), and were negligent when Defendants expelled him from the university as a disciplinary sanction for sexual misconduct. Plaintiff argues that the sexual activity with his accuser, Jane Roe, was consensual. Plaintiff seeks both monetary damages and equitable relief.

Specifically, Plaintiff claims that Defendants Janet Koski and Donna Beauchaine, in their official and individual capacities, and Defendant Christine Greer in her official capacity only, violated Plaintiff's constitutional right to procedural due process (Count I). Plaintiff further claims that Defendant NMU violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, by discriminating against him as a male during the disciplinary process (Count II). Plaintiff also claims that Defendant NMU breached its contract with Plaintiff when Defendant NMU allegedly

failed to follow its own policies, constructed policies that were unfair, and gave no rationale for its decision (Counts III, IV, and V).  Finally, Plaintiff claims that Defendants NMU, Koski, and Beauchaine were negligent, negligent per se, and/or grossly negligent in their handling of Plaintiff's disciplinary action (Counts VI and VII[1]).

Defendants filed a motion to dismiss, stating that Plaintiff received all the process that was due in the context of a student disciplinary investigation; that Plaintiff cannot establish that Defendant NMU discriminated against him based on his gender when it concluded that he violated the Student Code; and that Defendants are entitled to governmental immunity.  (ECF No. 6.)  For the following reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.

## I. Background

The allegations in the Complaint, which the Court must accept as true, are as follows:

Plaintiff first met Roe in September 2016 when they both started working in a cafeteria on campus.  The first day they met they started talking at work, continued talking after work, and eventually engaged in consensual sex that night.  From that time until late October 2016, Plaintiff and Roe engaged in consensual sexual activity once or twice a week.

On October 30, 2016, Roe attended a pre-Halloween party without Plaintiff.  When she was ready to leave the party, she texted Plaintiff to meet her at the party and walk her home.  Plaintiff went to the party and walked Roe back to his dorm room.  Roe did not seem drunk to Plaintiff; she was not slurring her words; and she could walk on her own.  Plaintiff did not witness Roe consume alcohol or provide her with alcohol that night.  When Plaintiff and Roe returned to Plaintiff's room, they engaged in oral and vaginal sex.  Roe actively participated and at no point told Plaintiff "no" or to stop.  Plaintiff asked Roe if he could take a video of Roe performing fellatio

---

[1] The Complaint refers to two separate counts as Count VI, but in this Opinion, the Court will refer to the final count alleging gross negligence as Count VII.

on him, and Roe agreed on the condition that Plaintiff not publicly post the video.  So, Roe voluntarily performed fellatio on Doe knowing that it was being videoed.  At all times during the sexual encounter, Roe was awake, coherent, alert, and fully functional, and even initiated the oral sex with Plaintiff.

After that night, Plaintiff and Roe continued communicating with each other via text message, having text conversations once to twice a month.  At some point, Roe came to Plaintiff's room and told him that she had not wanted to have sex with him on October 30, 2016, and was too drunk to say anything.  Plaintiff recalled the events differently but apologized.  The two agreed to remain friends and laughed about the incident.  They continued having text conversations after this conversation.  During one text conversation, Roe asked Plaintiff to delete the video he had taken of Roe performing fellatio, and Plaintiff complied.  Roe again confronted Plaintiff about what happened on October 30, 2016, via text message.  In that text conversation, Roe admitted that Plaintiff had told her that he was unaware that she was drunk that night.  Roe also stated that she saw Plaintiff as a friend.

During the summer or fall of 2017, Plaintiff invited Roe to see his new off-campus housing. Roe came over and, after talking for a couple of hours, Roe and Plaintiff again engaged in consensual sex.  Plaintiff texted Roe two to three times over the following month or two, but Roe did not respond.

More than a year after the October 30, 2016, incident, on March 16, 2018, Roe initiated a formal investigation by NMU into the October 30, 2016, incident.  Specifically, she alleged that, without her consent, Plaintiff undressed her, forced her to perform oral sex on him, and had penile/vaginal intercourse with her.

Associate Dean of Students Mary Brundage presented Plaintiff with the allegations against him.  Plaintiff was shocked because he thought that he and Roe were still friends, they had engaged in consensual sexual activity after October 30, 2016, and he had not even attempted to contact Roe since December 2017 or January 2018.  Brundage presented Plaintiff with a document giving him the option to affirm, deny, or state "no comment" for each allegation against him:

  a. Undressed her without her consent;
  b. Forced her to perform oral sex on him, knowing or that he should have known that she could not consent due to her level of intoxication; and
  c. Had penile/vaginal intercourse with her without her consent, knowing or that he should have known that she could not consent due to her level of intoxication.

(Complaint ¶ 64, ECF No. 1 at PageID.10.)

Ms. Brundage also informed Plaintiff that his punishment could range from a verbal warning to expulsion.  Plaintiff affirmed the first and third allegations but denied the second allegation of forcing Roe to perform oral sex on him.  (*Id.* ¶ 81, PageID.16.)  Plaintiff thought that affirming the allegations would lead to a lesser punishment and that, once he explained his side of the story, he may not receive any punishment at all.  During the exchange between Plaintiff and Ms. Brundage, Plaintiff attempted to tell Brundage his version of events, but she interrupted Plaintiff and told him that he would be able to tell his side of the story to the investigator at a later time.

On March 19, 2018, Defendant Beauchaine, who was assigned as the investigator, interviewed Roe.  Roe stated that on October 30, 2016, she was drinking vodka screwdrivers and Smirnoff Ice but could not recall how much she drank.  She contacted Plaintiff to come and get her.  She recalled going to Plaintiff's room and going to the futon.

According to Plaintiff, the remainder of Roe's statement contained several inconsistencies:

- Roe alleged that she told Plaintiff that she did not want to do anything, but she also claimed that she was unable to move, form words, or talk.

- She stated that she did not recall having oral or penetrative sex with Plaintiff, but she also alleged that she never gave Plaintiff permission for either act and recalled Plaintiff being on and in her.

- She claimed that she did not recall being naked until she ran to the bathroom to pee, but she later stated that she "stumbled" to the bathroom naked to pee and could not recall if that was before, during, or after the assault.

- She alleged that she did not know about the video of her performing oral sex on Plaintiff until almost a year later when Plaintiff informed her that he had it.  She claimed that the video showed that her eyes were glazed over.

- She admitted to staying in touch with Plaintiff after the alleged assault and that they had been physically intimate on one occasion after the incident.

On March 21, 2018, Plaintiff met with Defendant Beauchaine for his interview.  Defendant Beauchaine again presented Plaintiff with the charges against him.  Plaintiff explained his actions on the night of October 30, 2016, as described above.  According to Plaintiff, his interview testimony was inconsistent with his prior affirmation of two of the allegations against him. Defendant Beauchaine did not ask Plaintiff why he had affirmed two of the allegations against him if he disputed that Roe was too drunk to consent and claimed that Roe had actively participated in the sexual activity.  Plaintiff alleges that Defendant Beauchaine was hostile throughout the interview, used a very aggressive tone, and used language suggesting that she presumed his guilt.

On March 28, 2018, Plaintiff met with the Title IX Coordinator, Defendant Koski, to review the investigator's draft report, which contained Roe's statement, Plaintiff's statement, and

text messages between Plaintiff and Roe.  The text messages included a conversation regarding the October 30, 2016, incident, in which Plaintiff denied knowing that Roe was drunk that night, Roe admitted to still thinking of Plaintiff as a friend, and Plaintiff stated that Roe came on to him and that Roe did not tell him "no."  Defendant Koski instructed Plaintiff to comment on any errors in the report.  Two days later, Roe reviewed the draft report.  She commented that she recalled bits and pieces of vaginal intercourse and peed afterward to avoid a urinary tract infection.

Plaintiff was not given the opportunity to respond to Roe's statement; he could only review it and comment on the accuracy of his own statement.  He was not given a live hearing.  He was not given an opportunity to question Roe or present witnesses.  Defendant Beauchaine interviewed no witness other than Plaintiff and Roe.

On April 2, 2018, Defendant Beauchaine finalized her report.  On April 6, 2018, Defendant Koski informed Plaintiff that the Sexual Misconduct Review Board (SMRB) had met the previous day to review the final investigation report.  Based on a preponderance of the evidence standard, the SMRB determined that there was insufficient evidence to indicate use of force related to Roe performing oral sex on Plaintiff.  The SMRB, however, found that Plaintiff had affirmed the other two charges, and based on those findings, Plaintiff would be expelled effective May 5, 2018.  The SMRB provided no further rationale for its findings or level of sanction.

On April 27, 2018, Defendant Koski informed Plaintiff that the SMRB had reconvened to review the video of Roe performing oral sex on Plaintiff.  Based on the video, the SMRB revised its findings and found Plaintiff not responsible for the charge related to oral sex.  The SMRB reasoned that Plaintiff had not forced Roe to perform oral sex on him but still found that Plaintiff should have known that Roe could not consent due to being intoxicated.  In addition, the SMRB

stated that it did not find any evidence, including the video, to change Plaintiff's affirmation of the other charges. The SMRB also upheld the expulsion.

Under NMU's Sexual Misconduct Policy, the university only considers appeals based on new information sufficient to alter a decision or other relevant facts not brought up in the initial investigation because the individual appealing did not know such information or facts at the time of the investigation. On May 9, 2018, Plaintiff sent two appeal letters to Defendant Koski. The first letter stated that the disciplinary procedures violated his due process rights and Title IX and that the great weight of the evidence demonstrated that Plaintiff did not sexually assault Roe despite his initial affirmation of the allegations. The second letter argued that the punishment imposed was too severe. Both appeals were denied.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Courts may also consider various documents without converting the motion to a motion for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the

7

Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008) (citation omitted).

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  Procedural Due Process

Plaintiff brings his procedural due process claims pursuant to 42 U.S.C. § 1983 against Defendants Beauchaine and Koski, in their individual and official capacities, and against Defendant Greer, in her official capacity only. For the reasons stated below, Plaintiff's official capacity claims may proceed, but the Court will dismiss Plaintiff's individual capacity claims because Defendants are entitled to qualified immunity.

### *Official Capacity Claims*

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). Thus, generally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," and are not subject to suit under 42 U.S.C

§ 1983.  *Id.*  That being said, *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), creates a limited exception to sovereign immunity in which "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law," *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008), and "claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions."  *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002).  Accordingly, Plaintiff can pursue a claim against Defendants Beauchaine, Koski, and Greer in their official capacities that would grant Plaintiff reinstatement[2] if his factual assertions, accepted as true, establish a plausible violation of his procedural due process rights. *See Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974 (stating that a plaintiff has to allege "enough facts to state a claim for relief that is plausible on its face" to avoid dismissal).

The Court finds that Plaintiff has alleged a plausible violation of his procedural due process rights to move forward on his official capacity claims.  To determine whether a favorable view of Plaintiff's submissions would indicate a procedural due process claim, the Court has to decide whether Plaintiff had a liberty or "property interest that entitled h[im] to due process protection," and, if so, "what level of process was due."  *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 765 (6th Cir. 2010).

The Sixth Circuit has stated that "significant disciplinary decisions," such as suspension or expulsion, "clearly implicate[] a protected property interest, and allegations of sexual assault may impugn a student's reputation and integrity, thus implicating a protected liberty interest."  *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (internal quotation marks and alterations

---

[2] In his Relief Requested, Plaintiff also asks this Court to order Defendants to remove the Complaint, Investigative Report, and sanctions from Plaintiff's academic file, and enter an injunction prohibiting any further acts by Defendants that would violate Plaintiff's rights.  (ECF No. 1 at PageID.46.)

omitted).  "Because the Due Process Clause applies, 'the question remains what process is due.'"
*Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972)).

In 2005, the Sixth Circuit said that—despite the significant private interest that derives
from "the lifelong impact that expulsion can have on a young person"—a federal court's review
of a student disciplinary decision is "circumscribed."  *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629,
638 (6th Cir. 2005).  The Court is "limited to determining whether the procedures used by [the
university] were constitutional."  *Id.*  Therefore, the review consists of "consider[ing] the
additional procedures requested, any error-reducing benefit those procedures might have, and the
burden on [the university] of adding those additional procedures."  *Id.*  In any event, "there are two
basic due process requirements: (1) notice, and (2) an opportunity to be heard."  *Id.* at 634.

Here, Plaintiff claims that he was entitled to the following additional procedures: (1) a live
hearing; (2) an opportunity to cross-examine his accuser, Roe; (3) legal representation; and (4) a
higher standard than preponderance of the evidence.

The Supreme Court found that, in the context of student disciplinary actions, students are
entitled to "some kind of notice" and "some kind of hearing."  *Goss v. Lopez*, 419 U.S. 565, 579,
95 S. Ct. 729, 738 (1975).  In *Goss*, the Supreme Court analyzed the process due when a student
was subjected to a 10-day suspension.  In that context, the Supreme Court stated that the student
was entitled to "oral or written notice of the charges against him and, if he denie[d] them, an
explanation of the evidence the authorities have and an opportunity to present his side of the story."
*Id.* at 581, 95 S. Ct. at 740.  The Supreme Court also noted that harsher sanctions, such as
expulsions, "may require more formal procedures."  *Id.* at 584, 95 S. Ct. at 741.  The Sixth Circuit
has further stated: "While the exact outlines of process may vary, universities must at least provide
notice of the charges, an explanation of the evidence against the student, and an opportunity to

present his side of the story before an unbiased decision maker." *Univ. of Cincinnati*, 872 F.3d at 399–400.

"Evaluation of a witness's credibility cannot be had without some form of presence, some method of compelling a witness 'to stand face to face with the [fact finder] in order that it may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.'" *Id*. at 402 (quoting *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S. Ct. 337, 339 (1895)). An accused student is entitled to "an opportunity to explain his version of the facts" to the "disciplinarian" or "decisionmaker, which means the official responsible for the discharge." *Duchesne v. Williams*, 849 F.2d 1004, 1007 (6th Cir. 1988) (internal quotation marks and citations omitted).

Yet, "defendants are not required to facilitate witness questioning at every nonacademic misconduct hearing." *Univ. of Cincinnati*, 872 F.3d at 405. Cross-examination is "'essential to due process' only where the finder of fact must choose 'between believing an accuser and an accused,'" but the "panel need not make this choice if the accused student admits the 'critical fact[s]' against him." *Id*. (quoting *Flaim*, 418 F.3d at 641). "[I]f a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." *Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018).

Plaintiff has made out a plausible claim that he was entitled to a live hearing with an opportunity to cross-examine his accuser. Although he was able to present his version of the facts to Defendants Beauchaine and Koski, he was not able to testify directly to the SMRB, which was the body that was ultimately responsible for his discharge. Moreover, although still unclear that Plaintiff would prevail on this question in later proceedings, Plaintiff has plausibly argued that he

was entitled to some form of cross-examination of Roe.  While Plaintiff's case differs from the line of cases he cites, in that, during his first interview, he affirmed two of the allegations against him, Plaintiff's attempt to explain his affirmations to Ms. Brundage was rebutted, and Plaintiff later contradicted Roe's version of events in his interview.  Some form of witness questioning before the decision-maker would have allowed the SMRB to "choose between competing narratives" in making its findings.  *Id*.

Plaintiff's other proposed alternative procedures have not reached the same level of plausibility.  An accused student does not automatically have a right to legal representation in student disciplinary proceedings.  The Sixth Circuit has recognized only two scenarios in which an accused student *may* have a constitutional right to counsel in an academic disciplinary proceeding: (1) if the hearing is unusually complex or (2) when the university uses an attorney in the investigation or decision-making process.  *Flaim*, 418 F.3d at 640.  Neither scenario is present here.  "Full-scale adversarial hearings in school disciplinary proceedings have never been required by the Due Process Clause and conducting these types of hearings with professional counsel would entail significant expense and additional procedural complexity."  *Id*. at 640-41.

Plaintiff appears to argue not just that he was entitled to have representation of counsel but also that he was entitled to have Defendants inform him that he had a right to counsel.  Plaintiff has pointed to no case that holds that a school has a constitutional duty to inform a student of a right to counsel even if such a right exists.  To the extent Plaintiff argues that Defendants were required to inform him as a matter of school policy, violation of school policy does not rise to the level of a procedural due process violation.

> It is not every disregard of its regulations or assurances by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules or assurances results in a procedure which

itself impinges upon due process rights that a federal court should intervene in the
decisional processes of state institutions.

*Id*. at 640 (internal quotation marks, citation, and alterations omitted).

Plaintiff also contends that Defendants should use a higher standard than preponderance of
the evidence in student disciplinary proceedings alleging sexual assault.  However, the Sixth
Circuit has approved of the use of the preponderance of the evidence standard in student
disciplinary proceedings alleging sexual assault.  *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 n.2
(6th Cir. 2017).

### *Individual Capacity Claims*

Plaintiff alleges the same violations of procedural due process against Defendants
Beauchaine and Koski in their individual capacities.[3]  Defendants argue that they are entitled to
qualified immunity.  "Government officials are immune from civil liability under 42 U.S.C. § 1983
when performing discretionary duties, provided 'their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would have known.'"  *Simmonds v.
Genesee Cty.*, 682 F.3d 438, 443 (6th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818,
102 S. Ct. 2727, 2738 (1982)).  "Once a defendant raises qualified immunity, the burden is on the
plaintiff to demonstrate that the official is not entitled to qualified immunity by alleging facts
sufficient to indicate that the government official's act in question violated clearly established law
at the time the act was committed."  *Id*. at 444 (internal quotation marks, citations, and alterations
omitted).  In all, qualified immunity is meant to prevent government officials from being held

---

[3] Plaintiff additionally claims in his response to Defendants' motion to dismiss that Defendants violated his procedural
due process rights because his admissions to the charges were not knowing and voluntary when he affirmed the
allegations in a state of nervousness and hoping for lesser punishment.  This claim does not appear in the Complaint.
Nevertheless, the claim fails on the merits because Plaintiff has pointed to no caselaw to support his contention that
admissions must be knowing and voluntary in the context of a student disciplinary proceeding; all of his citations refer
to criminal law standards, which are inapplicable in this context.

liable for "reasonable mistakes of law, fact, or mixed questions of law and fact made while acting within their scope of authority." *Id*. at 443.

"The first prong of the qualified immunity analysis asks whether a constitutional violation has occurred, that is, whether 'a violation could be made out on a favorable view of the parties' submissions.'" *Pucci*, 628 F.3d at 765 (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). "If a constitutional violation can be found, the second prong of a qualified immunity analysis examines whether the right was clearly established at the time of the deprivation." *Id*. at 767 (internal quotation marks omitted). The Supreme Court has held that, in determining whether a right was clearly established, liability attaches "only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270, 117 S. Ct. 1219, 1227 (1997) (internal quotation marks, citation, and alterations omitted). Here, Plaintiff has plausibly claimed that due process dictates a live hearing and cross-examination of Roe, but the Court finds that Defendants did not violate Plaintiff's *clearly established* rights, and are therefore entitled to qualified immunity.

In terms of a live hearing, the Supreme Court has simply stated that students in disciplinary proceedings are entitled to "some kind of notice" and "some kind of hearing." *Goss*, 419 U.S. at 579, 95 S. Ct. at 738. However, in *Goss*, the Supreme Court specifically stated that "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, *if he denies them*, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id*. at 565, 95 S. Ct. at 740 (emphasis added). While *Goss* only addressed a short suspension of less than 10 days, in that context, the Supreme Court concluded that it is only upon denial of charges that a student is entitled

14

to an explanation of the evidence the authorities have and an opportunity to present his side of the story.

Since *Goss*, the Sixth Circuit has stated that "universities must at least provide notice of the charges, an explanation of the evidence against the student, and an opportunity to present his side of the story before an unbiased decision maker." *Univ. of Cincinnati*, 872 F.3d at 399–400 (internal quotation marks omitted). However, in March to April 2018, it was not entirely clear that a student was entitled to a live hearing.[4] In this case, Plaintiff was notified of the charges on multiple occasions, he was able to see all of the evidence against him (Roe's interview and the text messages), and he was given the opportunity to present his side of the story through a statement submitted to the SMRB. Furthermore, the Sixth Circuit in *University of Cincinnati* required that the student be given an "opportunity to share his version of events . . . at 'some kind of hearing,'" *id*. at 400 (quoting *Goss* 419 U.S. at 579, 95 S. Ct. at 738), only after the student had denied responsibility for the allegations. *Id*. at 397. Plaintiff in this case, at least initially, did not deny the charges when presented with the allegations. Although a witness should appear in front of the fact-finder when credibility is an issue, *id*. at 402, after Plaintiff affirmed the charges, university employees may have believed that credibility was not an issue.

Turning to the question whether Plaintiff was entitled to cross-examine his accuser, the law in place at the time Defendants investigated and disciplined Plaintiff's actions was that cross-examination was needed only "where the finder of fact must choose 'between believing an accuser and an accused,'" but the "panel need not make this choice if the accused student admits the 'critical fact[s]' against him." *Univ. of Cincinnati*, 872 F.3d at 405 (quoting *Flaim*, 418 F.3d at

_____

[4] While the Sixth Circuit requires a university to give an accused student "an opportunity to present his side of the story *before* an unbiased decision maker," *Univ. of Cincinnati*, 872 F.3d at 399–400 (emphasis added), "before" can mean "in the presence of" or "[u]nder the consideration or jurisdiction of." American Heritage Dictionary of the English Language (5th ed. 2011).

641).  While there may be some distinction in the legal context between affirming charges and admitting critical facts, Defendants' mistake in accepting the affirmations despite other contrary evidence was reasonable under the circumstances.  In particular, the first and third allegations charged that Plaintiff "[u]ndressed [Roe] without her consent" and "[h]ad penile/vaginal intercourse with [Roe] without her consent, knowing or that he should have known that she could not consent due to her level of intoxication."  (Compl. ¶ 64, ECF No. 1 at PageID.10.)  An affirmation of those allegations could have reasonably indicated to Defendants that Plaintiff acknowledged that: (1) Plaintiff undressed Roe without her consent; (2) Plaintiff had penile/vaginal intercourse with Roe; and (3) Plaintiff knew or should have known that Roe could not consent due to her level of intoxication.  Importantly, Defendants found Plaintiff responsible only for the charges that he affirmed.

Plaintiff later gave a statement inconsistent with his affirmations.  However, it was only after the disciplinary proceedings of this case that the Sixth Circuit stated in *Baum*, 903 F.3d at 578, that cross-examination is required if the fact-finder must "choose between competing narratives," and even in *Baum*, the plaintiff had not affirmed any of the allegations.  Thus, the right to cross-examine an accuser after the accused affirmed the allegations was not a right that was clearly established at the time Defendants sanctioned Plaintiff.

## IV.  Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681. Plaintiff alleges that Defendant NMU violated Title IX because its investigation and punishment

were motivated by gender bias against Plaintiff as a male.  However, Plaintiff has not presented a viable claim under Title IX.

The Sixth Circuit has "recognized at least four theories of Title IX liability in cases alleging gender bias in university disciplinary proceedings: (1) erroneous outcome, (2) selective enforcement, (3) deliberate indifference, and (4) archaic assumptions." *Doe v. Univ. of Dayton*, No. 18-3339, 2019 WL 1224606, at *3 (6th Cir. Mar. 15, 2019).  Plaintiff proceeds only under an "erroneous outcome" theory, and "[b]ecause Doe's core argument is that he was subject to unfair procedures that were biased against men, this is the Title IX theory that most naturally fits his allegations." *Id*.

"To survive a motion to dismiss under the erroneous-outcome theory, a plaintiff must plead facts sufficient to (1) cast some articulable doubt on the accuracy of the disciplinary proceeding's outcome, and (2) demonstrate a particularized causal connection between the flawed outcome and gender bias." *Baum*, 903 F.3d at 585 (internal quotation marks and ellipses omitted). "[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (internal quotation marks omitted).

Here, although the Plaintiff has plausibly alleged that his proceeding was procedurally flawed, Plaintiff has failed to show a particularized causal connection between the allegedly flawed outcome and gender bias.  Plaintiff's complaint merely alleges that Defendants showed a bias in favor of alleged victims of sexual assault who are often female, and against alleged perpetrators of sexual assault who are often male.  (*See* Pl.'s Resp., ECF No. 10 at PageID.216-17; Compl. ¶¶ 187, 190-93.)  But a claim that a disciplinary system "is biased in favor of alleged victims and

against those accused of misconduct . . . does not equate to gender bias because sexual-assault victims can be both male and female." *Id*. at 453.

Plaintiff cites *Baum*, 903 F.3d at 586-87, to argue that a Title IX claim survives a motion to dismiss if a plaintiff alleges that (1) a defendant credited all female testimony over all male testimony and (2) the defendant faced pressure to punish accused males. However, the facts of *Baum* differed substantially from the facts of this case. In *Baum*, the investigation included testimony from several witnesses (more than twenty), instead of just the complainant and accused. The decision to expel the accused student was made by an appeal board, which credited testimony only from female witnesses, despite making all of its "credibility findings on a cold record." *Id*. at 586. The university was facing specific pressure to punish accused males because the federal government was investigating whether the university's process for responding to allegations of sexual misconduct discriminated against women, and the media sharply criticized the university for its response to female complainants. *Id*.

These different facts make *Baum* inapposite to this case. Here, Plaintiff has not shown that females in general are found credible, just that his female accuser was found credible. Moreover, Plaintiff points to general pressure that Defendants faced from campus victims' rights advocates (Compl. ¶ 196), but that is not the same as pressure to punish males because the federal government is investigating the university for discrimination against females.

In fact, Plaintiff's allegations are akin to those in the recent Sixth Circuit case, *Doe v. University of Dayton*, No. 18-3339, 2019 WL 1224606 (6th Cir. Mar. 15, 2019). In that case, the Sixth Circuit found that "generalized, conclusory statements" that accusers, who are often female, are treated more favorably than accused, who are often male, "do not suffice to allege a

*particularized* causal connection between gender bias and Doe's suspension." *Id*. at \*4 (emphasis in original).

Plaintiff argues that he has demonstrated a particularized causal connection because he pointed to specific statements by Defendant Beauchaine that indicated that she credited Roe over Plaintiff, and that allegations of gender bias sufficient to survive a motion to dismiss may include "statements by pertinent university officials." *Doe v. Miami Univ.*, 882 F.3d 579, 593 (6th Cir. 2018). The flaw in Plaintiff's argument is that all of his specific factual allegations point to a bias in favor of a complainant over a respondent, rather than a bias in favor of females over males. And again, even if the majority of respondents are male, that is not enough to show gender bias. *Univ. of Dayton*, 2019 WL 1224606, at \*3 (stating that "it is not enough to allege that in all of one university's sexual assault investigations during the relevant period, 'the accused was male and was ultimately found responsible'") (quoting *Cummins*, 662 F. App'x at 453).

### V.  Breach of Contract, Promissory Estoppel

Plaintiff's breach of contract, breach of implied contract, and promissory estoppel claims center around his general claim that Defendant NMU failed to follow its policies in the Student Handbook, in particular its Sexual Misconduct policies.

"[A] student may raise breach of contract claims arising from a university's alleged failure to comply with its rules governing disciplinary proceedings." *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011). However, the appropriate question in the context of these breach of contract claims is "whether the proceedings fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard." *Faparusi v. Case W. Reserve Univ.*, 711 F. App'x 269, 277 (6th Cir. 2017) (internal quotation marks omitted).

19

Here, Plaintiff argues generally that his proceedings were unfair, in violation of Defendants "duty . . . to ensure that the proceedings against Plaintiff were conducted with basic fairness." (Compl. ¶ 218, ECF No. 1 at PageID.41.)  But, "[i]n light of the governing objective standard, we may not accept as sufficient Doe's subjective claim of an unfair proceeding that reached the wrong conclusion. Nor may we derive an ideal of fairness by analogy to the procedural protections applicable in courts of law." *Univ. of Dayton*, 2019 WL 1224606, at *7.

Thus, the Court will look only to Plaintiff's specific allegations of breach in comparison to applicable NMU policies.  Plaintiff has alleged that Defendant NMU failed to follow its policies in three ways: (1) by not actually using a preponderance of the evidence standard;[5] (2) by not advising him of his right to legal representation; and (3) by failing to provide rationale for its decision.  However, according to Plaintiff's own allegations, the SMRB found Plaintiff responsible under a preponderance of the evidence standard (correct standard) for the charges that he had affirmed (rationale), thus Defendant NMU provided procedures consistent with its policies. (Compl. ¶ 118.)

The only arguable breach of contract was the failure to inform Plaintiff that he could have legal representation in connection with the proceedings.  Plaintiff alleged that Defendants failed to inform him that he had a right to have an advisor or attorney present during the investigation, contrary to NMU policy.  In support of this allegation, Plaintiff attached NMU's Sexual Misconduct Policy from the relevant time frame.  (ECF No. 17-2.)  According to the Sexual Misconduct Policy at section 8.8:

The Respondent will be informed of the right to:

---

[5] Plaintiff argues that if Defendants had used a preponderance of the evidence standard, they would have reached a different result.  However, that allegation is merely "Doe's subjective claim of an unfair proceeding that reached the wrong conclusion," which is not sufficient to establish a breach of contract claim under the prevailing objective standard. *Univ. of Dayton*, 2019 WL 1224606, at *7.

- have one adviser of their choosing attend meetings and interviews with them, which may include an attorney (at their own expense), colleague, or other person they identify; the adviser may not be a witness or a material party in the investigation; the adviser is limited to advising the complainant or respondent, and may not speak for the party they are advising; their role is to provide support and assistance[.]

(*Id.* at PageID.255.)

Considering the policy cited by Plaintiff, the Court finds that Plaintiff has alleged a plausible breach of contract based on Defendants failure to inform him that he could have an adviser, which could be an attorney, present for meetings and interviews in connection with his disciplinary proceedings.

## VI.   Negligence, Negligence Per Se, Gross Negligence

Plaintiff alleges that Defendants were negligent, negligent per se, and grossly negligent in failing to follow NMU policy and in conducting the investigation, hearing, and appeal processes in a way that was indifferent to the truth of the allegations.  However, Plaintiff fails to address the effect of the Governmental Tort Liability Act (GTLA) on his negligence-based claims.

Under the GTLA, Defendant NMU "is immune from tort liability" so long as it was "engaged in the exercise or discharge of a governmental function."  Mich. Comp. Laws § 691.1407(1); *see also* § 691.1401(g) (defining the entities entitled to governmental immunity as including public universities and colleges).  Defendant NMU enjoys a presumption of immunity unless Plaintiff establishes that his claim falls into one of the few statutory exceptions, which Plaintiff has not done here.  *Mack v. City of Detroit*, 467 Mich. 186, 201, 649 N.W.2d 47, 55–56 (2002).

Likewise, Defendants Beauchaine, Koski, and Greer are entitled to tort immunity under GTLA as employees of Defendant NMU as long as they were acting within the scope of their authority.  Mich. Comp. Laws § 691.1407(2).  Here, Plaintiff alleges that Defendants were

negligent in their investigation and disposition of the sexual misconduct allegations against Plaintiff.  Defendants' conduct falls within the scope of their authority, and therefore, Defendants are immune from Plaintiff's negligence and negligence per se claims.

As individual employees, Defendants Beauchaine, Koski, and Greer are not protected from liability for grossly negligent behavior.  Mich. Comp. Laws § 691.1407(2)(c).  However, Plaintiff's conclusory allegations of gross negligence (Compl. ¶¶ 235-36) are not sufficient to survive a motion to dismiss.  As discussed at length above, Defendants' only arguably violative conduct included: (1) failure to give Plaintiff a live hearing; (2) failure to afford Plaintiff the opportunity to cross-examine his accuser; and (3) failure to inform Plaintiff of the right to counsel during the disciplinary process.  NMU policy did not provide for a live hearing or cross-examination, and the Court finds that operating within school policy does not demonstrate grossly negligent behavior. Additionally, the Court finds that Defendants' failure to inform Plaintiff of a right to have an adviser present, who may be an attorney, is not grossly negligent behavior.  Defendants did not deny Plaintiff the opportunity to have an adviser present but rather failed to inform Plaintiff of that opportunity.  *See* Mich. Comp. Laws § 691.1407(8)(a) (defining "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results").  Thus, Plaintiff's gross negligence claim will also be dismissed.

### VII.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 6) will be granted in part and denied in part.

A separate order will follow.

Dated: May 28, 2019                                /s/ Gordon J. Quist
                                             _____
                                                GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE